**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____x

DONNIE JO HARB, an individual; on behalf of
herself and all others similarly situated,

               Plaintiffs,

           vs.

NORTHSTAR LOCATION SERVICES, LLC,
a New York Limited Liability Company; and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

               Defendants.
_____x

CASE NO.:   **11 CV 0253**

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF**
**THE FAIR DEBT COLLECTION**
**PRACTICES ACT**

**DEMAND FOR JURY TRIAL**

## I. PRELIMINARY STATEMENT

1.     Plaintiff, DONNIE JO HARB ("Plaintiff" or "HARB"), on behalf of herself and the class of all others similarly situated, brings this action for the illegal practices of the Defendant NORTHSTAR LOCATION SERVICES, LLC ("Defendant" or "NORTHSTAR") who, _inter alia_, used false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect an alleged debt from the Plaintiff and others.

2.     The Plaintiff alleges that NORTHSTAR's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, _et seq._ ("FDCPA").

3.     Such collection practices include, _inter alia_, engaging consumers and other persons in telephonic communications in an attempt to collect a debt and obtain information about consumers wherein NORTHSTAR fails to disclose at the outset of those communications that a third person(s) are secretly monitoring and/or recording the communication.

4.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of

abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

5.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

6.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representation or means in connection with the collection of any debt and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among the *per se* violations prohibited by that section is: the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

7.      The Plaintiff, on behalf of herself and all others similarly situated, seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA and all other common law or statutory regimes.

## II. PARTIES

8.     HARB is a natural person.

9.     At all times relevant to this lawsuit, HARB was a citizen of, and resided in, the City of Raleigh, Wake County, North Carolina.

10.    At all times relevant to this lawsuit, NORTHSTAR is a for-profit Limited Liability Company existing pursuant to the laws of the State of New York.

11.    NORTHSTAR maintains its principal business address at 4285 Genesee Street, Town of Cheektowaga, Erie County, New York.

12.    Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

13.    The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 25, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of NORTHSTAR that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by NORTHSTAR and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

## III. JURISDICTION & VENUE

14.    Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

15.     Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

16.     Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims of MELOSKIE occurred within this federal judicial district, and because NORTHSTAR is subject to personal jurisdiction in the State of New York at the time this action is commenced.

## IV. FACTS CONCERNING PLAINTIFF

17.     Sometime prior to February 10, 2011, HARB allegedly incurred a financial obligation to Bank of America ("Harb Obligation").

18.     The Harb Obligation arose out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.

19.     Defendants contend that the Harb Obligation is in default.

20.     The alleged Harb Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

21.     HARB is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

22.     HARB is informed and believes, and on that basis alleges, that sometime prior to February 10, 2011, the creditor of the Harb Obligation either directly or through intermediate transactions assigned, placed, transferred, or sold the debt to NORTHSTAR for collection.

23.     NORTHSTAR collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

24.     NORTHSTAR is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

25.     Within the one year immediately preceding the filing of this complaint NORTHSTAR contacted HARB on multiple occasions on via telephone in an attempt to collect the Harb Obligation.

26.     NORTHSTAR has contacted HARB on both her personal telephone and by calling her place of employment, on multiple occasions, in an attempt to collect the Harb Obligation.

27.     Within the one year immediately preceding the filing of this complaint NORTHSTAR left telephonic voice messages for Plaintiff in connection with its efforts to collect the Harb Obligation from her ("Messages").

28.     By way of limited example, the following is a transcription of one such Message that NORTHSTAR left for HARB on her employer's general voicemail system on February 10, 2011:

> "Donnie Harb, Brian 'Derenda' calling with the Pre-Legal Department here at Northstar Services. Today is February 10th Two Thousand and Eleven. Harb, I need a return call from either you or your legal representation in regards to the pending file received here in my office February 3rd. Before I make my final determination on this matter Mr. Harb, I would like to try and touch base with you. My number here is toll-free, 866-677-2569. When calling refer to Reference and File Number 11-109876. Again, my number toll-free, 866-677-2569."

29.     The telephone number "866-677-2569" is answered by is answered by persons who are employed by NORTHSTAR as "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

30.     The NORTHSTAR debt collectors who answer calls placed to telephone number "866-677-2569" are not licensed attorneys.

31.     On information and belief, NORTHSTAR does not employ or staff licensed attorneys to collect debts from consumers.

32.     Each of the Messages was left by persons employed as debt collectors by NORTHSTAR in connection with the collection of a "debt" as defined by 15 U.S.C. §1692a(5).

33.     Each of the Messages is a "communication" as defined by 15 U.S.C. § 1692a(2).

34.     Each of the Messages uniformly failed to disclose that the communication was from a debt collector.

35.     Each of the Messages uniformly failed to disclose the purpose or nature of the communication (i.e., an attempt to collect a debt).

36.     Each of the Messages uniformly failed to provide meaningful identification of NORTHSTAR's identity as the caller.

37.     At the time HARB received the Messages, she did not know the identity of callers.

38.     At the time HARB received the Messages, she did not know any company or legal firm named "Northstar Services."

39.     At the time HARB received the Messages, she did not know NORTHSTAR.

40.     At the time HARB received the Messages, she did not know anything about NORTHSTAR.

41.     HARB has never had a personal relationship with NORTHSTAR or any of its employees.

42.     HARB has never had a consumer relationship with NORTHSTAR or any of its employees.

43.     HARB has never had a business relationship with NORTHSTAR or any of its employees.

44.     HARB has never been a client of NORTHSTAR.

45.     HARB has never been a customer of NORTHSTAR.

46.     At the time HARB received the Messages, she did not know that the callers were a debt collector.

47.     At the time HARB received the Messages, she did not know that the calls concerned the collection of a debt.

48.     To date, HARB has not received any written correspondence from NORTHSTAR.

49.     The only way for Plaintiff and/or a least sophisticated consumer to obtain the identity of the caller leaving the Messages, and to ascertain the purpose underlying the Messages, is to place a return call to the telephone number provided in the Messages and speak with a debt collector employed by NORTHSTAR, and then provide that debt collector with personal information.

50.     NORTHSTAR intended that the Messages have the effect of causing Plaintiff and least sophisticated consumers to place return calls to the telephone number provided in the Messages and speak with its debt collectors, and then provide those debt collectors with their personal information, as the sole means of obtaining the identity of the caller leaving the Messages, and to ascertain the purpose underlying the Messages.

51.     Scores of federal court decisions -- including the 11th Circuit Court of Appeals and all of the Districts Courts within the State of New York -- uniformly hold that the FDCPA requires debt collectors to disclose in its telephonic voice messages left for consumers, such as the Messages, that the call is from a debt collector.

52.     At all times relevant to this action, NORTHSTAR was aware of the substantial weight of legal authority requiring it to disclose in its telephonic voice messages left for

consumers, such as the Messages, that the call is from a debt collector.

53.     At all times relevant to this action, NORTHSTAR willfully, deliberately, and intentionally chose not to disclose in its telephonic voice messages left for Plaintiff and similarly situated consumers, such as the Messages, that the call is from a debt collector.

54.     Scores of federal court decisions -- including the 11th Circuit Court of Appeals and all of the District Courts within the State of New York -- uniformly hold that the FDCPA requires debt collectors to provide meaningful identification of itself in telephonic voice messages left for consumers, such as the Messages, by accurately stating the name of the debt collection company and stating the nature and/or purpose of the call.

55.     At all times relevant to this action, NORTHSTAR was aware of the substantial weight of legal authority requiring it to provide meaningful identification of itself in telephonic voice messages left for consumers, such as the Messages, by accurately stating its company name and stating the nature and/or purpose of the call.

56.     At all times relevant to this action, NORTHSTAR willfully, deliberately, and intentionally chose not to provide meaningful identification of itself in telephonic voice messages left for consumers, such as the Messages, by accurately stating its company name and stating the nature and/or purpose of the call.

57.     NORTHSTAR has also been named as a defendant in scores of individual and class action lawsuits across the United States, including the State of New York, for its failure and refusal to disclose in its telephonic voice messages left for consumers, including the Messages, that the call is from a debt collector and for failing to provide meaningful disclosure of the caller's identity by stating its company name and the nature or purpose of the call.

58.    NORTHSTAR regularly settles lawsuits and other consumer complaints across the United States, including the State of New York, for its failure and refusal to disclose in its telephonic voice messages left for consumers, including the Messages, that the call is from a debt collector and for failing to provide meaningful disclosure of the caller's identity by stating its company name and the nature or purpose of the call.

59.    NORTHSTAR's act of leaving the Messages for HARB is conduct the natural consequences of which is to harass, oppress, or abuse a person in connection with the collection of a debt and is in violation of the FDCPA.

60.    NORTHSTAR's act of leaving the Messages for HARB constitutes the use of a false, deceptive, or misleading representation or means in connection with the collection of any debt and is in violation of the FDCPA.

61.    The FDCPA secures a consumer's right to have a debt collector cease further communications with the consumer. By failing to meaningfully identify itself, disclose the purpose of its call and state that NORTHSTAR is a debt collector in a manner understandable to the least sophisticated consumer, NORTHSTAR has engaged in conduct designed to deprive consumers of their right to have a debt collector cease further communications.

62.    On or about February 14, 2011, Plaintiff's employer listened to, and then forwarded Plaintiff, the above-referenced Message from "Brian 'Derenda'" with the "Pre-Legal Department at Northstar Services."

63.    On February 14, 2011, after listening to the above-referenced Message from "Brian 'Derenda'" with the "Pre-Legal Department at Northstar Services," Plaintiff dialed the telephone number "866-677-2569," which was answered by an unidentified person at NORTHSTAR ("2/14/11 Telephone Conversation").

64.    The 2/14/11 Telephone Conversation is a "communication" as defined by 15 U.S.C. § 1692a(2).

65.    At the commencement of the 2/14/11 Telephone Conversation, the unidentified person requested that Plaintiff provide information, which Plaintiff did, and then the call was transferred to an individual who identified himself as "Mr. Derenda."

66.    At no time prior to the time the 2/14/11 Telephone Conversation was transferred to Mr. Derenda, did the unidentified person, or anyone else at NORTHSTAR, inform Plaintiff that NORTHSTAR was a debt collector.

67.    At no time prior to the time the 2/14/11 Telephone Conversation was transferred to Mr. Derenda, did the unidentified person, or anyone else at NORTHSTAR, inform Plaintiff that her telephone conversation might be surreptitiously monitored or recorded by an unannounced third person(s).

68.    Once the 2/14/11 Telephone Conversation was transferred to, and answered by Mr. Derenda, he did not notify Plaintiff at the outset of the 2/14/11 Telephone Conversation that he was a debt collector.

69.    Once the 2/14/11 Telephone Conversation was transferred to, and answered by Mr. Derenda, he did not notify Plaintiff at the outset of the 2/14/11 Telephone Conversation that her telephone conversation might be surreptitiously monitored or recorded by an unannounced third person(s).

70.    At the beginning of, and throughout, the 2/14/11 Telephone Conversation Mr. Derenda asked Plaintiff to disclose her personal, private, financial, and other information, which Plaintiff disclosed.

71.    During the 2/14/11 Telephone Conversation Mr. Derenda stated that he worked for "North Star Services," which is the "Pre-Legal Department for Bank of America."

72.    NORTHSTAR is not the "Pre-Legal Department for Bank of America" and, therefore, this statement by Mr. Derenda is false deceptive, and misleading.

73.    During the 2/14/11 Telephone Conversation Mr. Derenda told Plaintiff that she owed Bank of America $5,897.84 and then offered her a "settlement" of $2,123.22. In response, Plaintiff advised Mr. Derenda that she presently does not have any money to pay and would likely not have any money until June 2011. In reply, Mr. Derenda informed Plaintiff that Bank of America would just go ahead and file a lawsuit against her concerning the Harb Obligation.

74.    At the end of the 2/14/11 Telephone Conversation, immediately prior to terminating the call, Mr. Derenda quickly informed Plaintiff that he is a debt collector and that the 2/14/11 Telephone Conversation had been recorded.

75.    At no time prior to the end of the 2/14/11 Telephone Conversation, did Plaintiff know or believe that the 2/14/11 Telephone Conversation might be, or had been, surreptitiously monitored or recorded by an unannounced third person(s).

76.    At no time did Plaintiff ever consent to allow NORTHSTAR to surreptitiously monitor or record the 2/14/11 Telephone Conversation.

77.    On February 15, 2011, at approximately 8:57 p.m., a person who identified himself as "Jason Knowles" attempted to contact Plaintiff via telephone at her place of employment and spoke with Plaintiff's supervisor ("2/15/11 Telephone Conversation").

78.    Mr. Knowles is employed by NORTHSTAR as a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6).

79.     Mr. Knowles engaged Plaintiff's employer in the 2/15/11 Telephone Conversation in connection with NORTHSTAR's continued attempts to collect the Harb Obligation.

80.     The 2/15/11 Telephone Conversation is a "communication" as defined by 15 U.S.C. § 1692a(2).

81.     At the commencement of the 2/15/11 Telephone Conversation, Mr. Knowles asked Plaintiff's employer provide information about the Plaintiff and her employment, which Plaintiff's employer did.

82.     During the 2/15/11 Telephone Conversation, Mr. Knowles further asked Plaintiff's employer if he was aware that the Plaintiff does not pay her bills.

83.     At no time prior to the time the 2/15/11 Telephone Conversation did Mr. Knowles, or anyone else at NORTHSTAR, inform Plaintiff's employer that his telephone conversation might be surreptitiously monitored or recorded by an unannounced third person(s).

84.     On information and belief, the 2/15/11 Telephone Conversation was surreptitiously monitored and/or recorded by an unannounced third person(s).

85.     Most, if not all, reputable businesses in the United States of America, who monitors or records their telephone calls, inform callers at the outset of their telephone communications with those entities that these calls might be monitored or recorded.

86.     Most, if not all, reputable businesses in the United States of America, who monitors or records their telephone calls, will not connect a caller to, or allow them to speak with, one of their respective employees or representatives until the caller is advised that the call might be monitored or recorded.

87.     The Plaintiff has, as do other least sophisticated consumers, a reasonable expectation of privacy that their telephone communications with a debt collector will not be

surreptitiously monitored or recorded by an unannounced third person(s) unless they are first advised of this fact at the outset of their respective telephone communications.

88.    The Plaintiff has, as do other least sophisticated consumers, a reasonable expectation and belief that when a debt collector does not disclose to them at the outset of a telephone communication that their call may be monitored or recorded, that the debt collector is not in fact monitoring or recording their call.

89.    The Plaintiff has, as do other least sophisticated consumers, a reasonable expectation and belief that, when a debt collector does not disclose to them at the outset of a telephone communication that their call may be monitored or recorded, that by my continuing on with the call they have not consented to having their call monitored or recorded.

90.    The Plaintiff, and other least sophisticated consumers, are more likely to allow their telephone communications to be monitored or recorded by businesses they know and have a prior relationship because those entities are not acting in an adversarial role and, therefore, will not jeopardize a future relationship by misusing or abusing the information they obtain from monitoring or recording those calls.

91.    Plaintiff would not have voluntarily disclosed any information about herself to NORTHSTAR during the 2/14/11 Telephone Conversation had she known at the outset of the communication that the call might be, or was being, surreptitiously monitored or recorded by an unannounced third person(s).

92.    Plaintiff's employer would not have voluntarily disclosed any information about Plaintiff to NORTHSTAR during the 2/15/11 Telephone Conversation had he known at the outset of the communication that the call might be, or was being, surreptitiously monitored or recorded by an unannounced third person(s).

93.     NORTHSTAR's act of not disclosing <u>at the outset</u> of its telephone communications with consumers and others that their communications might be surreptitiously monitored or recorded by an unannounced third person(s) constitutes the use of a false, deceptive, or misleading representation or means in connection with the collection of any debt and is in violation of the FDCPA.

94.     NORTHSTAR's act of not disclosing <u>at the outset</u> of its telephone communications with consumers and others that their communications might be surreptitiously monitored or recorded by an unannounced third person(s) constitutes the use of a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## V.  POLICIES AND PRACTICES COMPLAINED OF

95.     It is NORTHSTAR's policy and practice to engage consumers and other persons in telephonic communications in an attempt to collect a debt, wherein it obtains information about consumers, and wherein secretly it monitors and/or records those communications without first disclosing that those communications are secretly monitored and/or recorded by an unannounced third person(s).

96.     On information and belief, and as alleged in this complaint under the Facts Concerning Plaintiff, there are more than 40 similarly situated consumers in the class set forth and described, *infra*.

## VI.  CLASS ALLEGATIONS

97.     This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

98.     With respect to the Plaintiff Class, this claim is brought on behalf of a class of (a) all persons in the State of North Carolina, (b) with whom Defendant engaged in a conversation via telephone, (c) wherein the Defendant failed to disclose at the outset of the conversation that the call may be monitored or recorded by an unannounced third person(s), (d) made in connection with Defendant's attempt to collect a debt, (e) which conduct violated the FDCPA, (f) during a period beginning one year prior to the filing of this initial action and ending 21 days after the service of this complaint.

99.     The identities of all class members are readily ascertainable from the records of NORTHSTAR and those companies and governmental entities on whose behalf it attempt to collects debts.

100.     Excluded from the Plaintiff Class are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

101.     There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members. The principal issues are: whether the Defendant's failure to disclose at the outset of its telephone conversations with consumers and others, in connection with its attempts to collect debts, violates 15 U.S.C. §§ 1692e and 1692e(10).

102.     The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

103.     The Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint. The Plaintiff has retained counsel with experience in handling

consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

104.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a)    **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.

(b)    **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether the Defendant's failure to disclose at the outset of its telephone conversations with consumers and others, in connection with its attempts to collect debts, violates 15 U.S.C. §§ 1692e and 1692e(10).

(c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendant's common uniform course of conduct complained of herein.

(d)    **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue the instant class

action lawsuit.

(e)   **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

105.   Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for NORTHSTAR, which, on information and belief, collects debts throughout the United States of America.

106.   Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the Defendant's conduct as described, *supra*, violates 15 U.S.C. §§ 1692e and 1692e(10) is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

107.   Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

108.   Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to modify her class definition or certify a class only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

## VII.  FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

109.   Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

110.   Defendant violated the FDCPA. Defendant's FDCPA violations include, but are not limited to, the following:

(a)   Engaging consumers and others in telephone communications, in connection with its attempts to collect debts, wherein Defendant permits an unannounced third person(s) to monitor and/or record those communications, without first disclosing at the outset of those communications that the communications may be monitored and/or recorded, which conduct constitutes the use of a false, deceptive, or misleading representation or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e; and

(b)   Engaging consumers and others in telephone communications, in connection with its attempts to collect debts, wherein Defendant permits an unannounced third person(s) to monitor and/or record those communications, without first disclosing at the outset of those communications that the communications may be monitored and/or recorded, which conduct constitutes the use of a false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

-18-

## VIII.  PRAYER FOR RELIEF

111.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Plaintiff Class as follows:

A.   **For the FIRST CAUSE OF ACTION**:

(i)   An order certifying that the First Cause of Action may be maintained as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing HARB and the undersigned counsel to represent the Plaintiff Class as previously set forth and defined above.

(ii)   An award of the maximum statutory damages for HARB and the Plaintiff Class pursuant to 15 U.S.C. § 1692k(a)(2)(B);

(iii)   Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(iv)   For such other and further relief as may be just and proper.

## IX. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:   Fresh Meadows, New York
March 14, 2011

WILLIAM F. HORN, ESQ. (WH-1070)
Law Office of William F. Horn
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone:  (718) 785-0543
Facsimile:  (866) 596-9003

*Attorney for Plaintiff, Donnie Jo Harb, and all others similarly situated*